IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERMAINE HARDEMAN,<br><br>Defendant. | CRIMINAL ACTION FILE<br><br>NO. 1:15-CR-94-MHC-RGV |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Russell G. Vineyard [Doc. 52] recommending that Defendant's Motion to Suppress Search and Seizure [Doc. 15] and Defendant's Motion to Suppress Statements [Doc. 16] be denied. The Order for Service of the R&R [Doc. 53] provided notice that, in accordance with 28 U.S.C. § 636(b)(1) (2012), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Within the required time period, Defendant filed his objections to the R&R [Doc. 57] ("Def.'s Objs.").

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

"Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1)(C), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which the parties object and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

Defendant makes two objections: (1) that the R&R erred in concluding that Defendant was not under arrest until after the execution of the search warrant, and (2) that the R&R erred by failing to conclude that Defendant's subsequent waiver

of his Miranda[1] rights was voluntary and not tainted by his prior illegal detention. These objections will be reviewed by this Court *seriatim*.

I.  The Magistrate Judge Did Not Err By Concluding That Defendant Was Lawfully Detained Based Upon Reasonable Suspicion of Criminal Activity and Was Not Placed Under Arrest Until After the Execution of a Search Warrant.

Resolution of Defendant's objection to the R&R depends upon whether Defendant was lawfully detained at the scene pending further investigation or whether Defendant's detention ripened into an arrest prior to the execution of the search warrant. It is necessary to review the circumstances leading up to the execution of the search warrant in order to resolve this issue.

On January 22, 2015, a "shots fired call" was received by City of Atlanta Police Officer Zachary Atha ("Atha"), who was assigned to the evening watch in Zone Three, which included the Hill Street neighborhood. Tr. of Oct. 28, 2015, Suppression Hr'g Before Magistrate Judge Vineyard ("Tr.") [Doc. 41] at 20-21. Atha arrived on the scene at 8:48 p.m. and observed six bullet holes in the front facade of a residence at 1007 Hill Street, later identified as the home of Freda Reed, as well as shell casings on the street from multiple firearms. Id. at 21-22, 32, 34. Atha spoke to Ms. Reed's next-door neighbor, Crystal Strickland, who

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

3

reported hearing gunshots, observing at least one bullet coming through her own residence, and seeing a black Dodge Charger driving off at a high rate of speed south of Hill Street followed by a silver Dodge Charger, with the two vehicles exchanging gunfire. Id. at 22-25, 32. Multiple caliber shell casings and projectile fragments were found in the street in front of the residence. Id. at 22, 36, 61. Ms. Strickland identified the silver Dodge Charger which she observed exchanging gunfire parked in front of Ms. Reed's residence. Id. at 36-37. While waiting for other officers to arrive on the scene, Atha observed three black males, one of whom was Defendant, exiting the vehicle and moving back and forth multiple times between Ms. Reed's residence and the vehicle. Id. at 26, 43.

A number of additional police officers arrived on the scene, including Investigators Raynard Price and Jamael Logan. Id. at 57-58, 79-81. After arriving at about 11:00 p.m., Price and Logan spoke with Atha and Ms. Strickland, who again identified the silver Dodge Charger that was present in Ms. Reed's driveway as one of the vehicles that was seen after shots had been fired. Id. at 59-60, 72, 80-83. Price and Logan also spoke with Ms. Reed about the prior gunfire. Id. at 64, 68. Ms. Reed informed Logan that, after her house was "shot up," she called her son and the silver Dodge Charger arrived within minutes. Id. at 78, 87-88. During their time on the scene, Price and Logan observed three males, including

4

Defendant, exiting and entering the vehicle at different times, although they did appear to take anything with them from the vehicle. Id. at 60-62, 68. After about an hour on the scene, and concerned about the safety of the officers, Price went over to the silver Dodge Charger and spoke with the three occupants to make sure there were no weapons in the car. Id. at 62-63, 65. The driver, Kelvin Watts, after initially hesitating, denied there were weapons inside the vehicle and, after being asked if he would permit a search of the car, left the car with the other two occupants, locked the door, and denied the police permission to search. Id. at 63-65, 84.

At that point, Watts, the driver of the vehicle, was standing by the car and Defendant started walking away to cross the street but was called back by Price and Logan. Id. at 64, 74, 85. Price and Logan then spoke with all three occupants of the vehicle separately and their stories as to why and how they arrived at the location were inconsistent with each other's. Id. at 66-69, 77-78, 86-88. When Defendant was questioned initially, he gave a false name. Id. at 30, 47, 69-70.

The officers then called for the K-9 unit to come to the scene so that a drug dog could do an open air search of the vehicle. Id. at 65, 85, 88. The K-9 unit arrived 15 to 30 minutes after being called and the drug dog performed an open air search resulting in "a hit" on the car, which was an alert for possible drugs inside

the vehicle. Id. at 65, 88-89. Price proceeded to obtain a search warrant for the vehicle at about 1:20 a.m. Id. at 53, 65-66, 70, 72. The search warrant was executed, and two handguns and a long gun were found in the trunk. Id. at 70, 89-90. Price testified that the three occupants of the vehicle, including Defendant, were then handcuffed[2] and placed in a patrol car to be taken to the Zone Three mini-precinct. Id. at 70.

There is no dispute that Defendant was detained by police officers once he attempted to leave the scene by crossing the street and was told to return. It is well-settled that probable cause is not necessary under the Fourth Amendment to conduct an investigatory stop. The police "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also Terry v. Ohio, 392 U.S. 1, 30-31 (1968). To determine whether reasonable suspicion exists, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a

---

[2] Logan testified that Defendant was handcuffed after the dog alerted for possible drugs in the car, while Atha testified that Defendant was placed in a squad car before the K-9 dog arrived. Id. at 51, 89. Although the testimony of the three officers is inconsistent on this point, this Court agrees with the Magistrate Judge that Defendant "was not in custody until he was arrested following the execution of a search warrant on the vehicle" and that, prior to the arrest, he was lawfully detained while the investigation was ongoing. R&R at 20 n.26.

'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvisu, 534 U.S. 266, 273 (2002). Examining the totality of the circumstances "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. at 273 (quotation and citation omitted). The Court will give due weight to an officer's experience and expertise when evaluating reasonable suspicion. Ornelas v. United States, 517 U.S. 690, 699 (1996); see also United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2000) ("[g]reat deference is given to the judgment of trained law enforcement officers on the scene.") (internal quotation marks and citation omitted). Moreover, "[a]ny kind of flight, even walking away, might support a finding of reasonable suspicion . . . ." United States v. Franklin, 323 F.3d 1298, 1302 (11th Cir. 2003) (citation omitted). "While flight is not proof of wrongdoing, it is indicative of such." Id. (citation omitted).

    This Court agrees with the Magistrate Judge that Defendant was not detained until he tried to walk away from the scene after being approached by Investigators Price and Logan. R&R at 23. This detention continued as a K-9 dog was promptly called to the scene after Watts refused to give consent to search the vehicle, the dog alerted officers to the presence of odor of narcotics in the vehicle, and a search

7

warrant for the car was applied for and obtained. Id. at 23-25. Defendant was not under arrest until after the search warrant was executed, the guns were found in the trunk of the vehicle, and Defendant was transported to the mini-precinct for further questioning. Id. at 20 n.26.

Defendant contends that he was "placed in custody . . . when . . . he was prevented from crossing the street at the direct command of law enforcement." Def.'s Objs. at 2. Defendant further asserts that he was "not permitted to leave the scene, detained in a police vehicle for some hours," "questioned by officers intent on extracting inculpatory statements," and "subjected to protracted detention while officers attempted to manufacture a basis for a search warrant." Id. at 3, 5. Defendant relies upon United States v. Acosta, 363 F.3d 1141 (11th Cir. 2004) in support of his challenge.

In Acosta, the Eleventh Circuit applied "four non-exclusive factors" to assist in determining whether there is a valid Terry-stop or an arrest without probable cause: (1) the law enforcement purposes served by the detention; (2) the diligence with which the police pursue the investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. Acosta, 363 F.3d at 1146. In analyzing these four factors, the Court concludes that the Defendant's detention

was a valid <u>Terry</u>-stop that did not become an arrest until after the execution of the search warrant uncovered the weapons in the vehicle.

A.     Law Enforcement Purposes Served by the Detention

"The most important consideration" in analyzing the first factor "is whether police detained [the defendant] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference." <u>Acosta</u>, 363 F.3d at 1146 (quoting <u>United States v. Gil</u>, 204 F.3d 1347, 1351 (11th Cir. 2000)). In this case, prior to detaining Defendant as he was attempting to walk away from the scene, police officers were aware of the following:

- A "shots fired" call was received at the police station.

- Ms. Strickland witnessed gunfire exchanged between two vehicles and identified one of the vehicles involved in the shooting parked in the driveway of Ms. Reed's house next door.

- Ms. Reed, whose house had six bullet holes from the gunfire, told police that the silver Dodge Charger appeared in her driveway immediately after she called her son for help.

- Shell casings were found at the scene from multiple weapons.

- Three occupants of the vehicle, including Defendant, were observed walking back and forth between the vehicle and Ms. Reed's house.

9

- The occupants exited the vehicle and the driver locked the vehicle after being asked by investigators if any weapons were inside.

At the time Defendant started walking away from the scene, the totality of the circumstances demonstrated that the police had a reasonable suspicion that he could have been involved in illegal activity, justifying his detention. Moreover, the methods of investigation pursued by the police (canine sniff followed by search warrant application and execution) were those that would confirm or deny suspicions expeditiously. See United States v. Place, 462 U.S. 696, 707(1983) (holding that the use of a drug-sniffing dog as an acceptable investigation technique that can be performed in a minimally intrusive manner); Michigan v. Summers, 452 U.S. 692, 702 (1981) (holding that the fact that a defendant is physically detained while a search warrant is executed does not necessitate a finding that the defendant is under arrest); United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988) (concluding that detention during a canine sniff "is the kind of brief, minimally intrusive investigation technique that may justify a Terry stop"); United States v. Pantoja-Soto, 768 F.2d 1235, 1236 (11th Cir. 1985) (holding that police officers had reasonable suspicion to make a Terry stop of an individual while they were obtaining a search warrant).

B.  Diligence of Pursuit of Investigation

A K-9 unit was called and arrived on the scene within 15 to 30 minutes of Defendant's detention. Once the canine sniff revealed a positive outcome, Investigator Price immediately proceeded to obtain a search warrant of the vehicle, which was executed shortly after it was signed. There is no indication in the record that Price did not pursue the search warrant diligently once probable cause for the warrant existed. See United States v. Williams, 238 F. App'x 566, 568 (11th Cir. 2007) (holding that police act with diligence when "each investigatory act by the police logically led to the next act which was done without delay") (internal punctuation and citation omitted); Croom v. Balkwill, 672 F. Supp. 2d 1280, 1293 (M.D. Fla. 2009) ("[W]hen executing a search warrant, law enforcement officers temporarily detain individuals for the legitimate purposes of preventing flight, maintaining control, and ensuring the safety of everyone on the scene.").

C.  The Scope and Intrusiveness of the Detention

Although the testimony of the police officers was contradictory as to the scope and intrusiveness of Defendant's detention while the canine sniff and search warrant process was unfolding, the Court finds that, regardless of which version of events is credited, the scope of intrusiveness of the detention did not exceed the

amount reasonably needed by the police to ensure their personal safety. If Investigator Price's chronology is credited, Defendant was detained but not handcuffed or placed in a patrol car until after the search warrant was executed, when he was then under arrest. That would clearly be a detention limited in scope and intrusiveness. Investigator Logan testified that Defendant was handcuffed after the canine sniff, and Officer Atha testified that Defendant was placed in a police car prior to the canine sniff. The fact that Defendant may have been handcuffed and/or in a police vehicle while detained, although a severe form of intrusion, does not constitute the type of scope or intrusiveness that would have converted the detention into an arrest. See Gil, 204 F.3d at 1351 ("to maintain the safety of the officers and the ongoing investigation of the residence, handcuffing [the defendant] and detaining her in the back of the police car was reasonable"); United States v. Williams, 185 F. App'x 866, 870 (11th Cir. 2006) (finding that handcuffing and placing the defendant in the back of a patrol car during investigation where there were reports of a shotgun being fired at a residence was reasonable); Acosta, 363 F.3d at 1147 (stating that the fact that an officer draws a weapon or handcuffs a suspect does not necessarily lead to the conclusion that the stop has ripened into an arrest).

D. The Duration of the Detention

Based upon Investigator Price's testimony, which was the only testimony of a law enforcement officer who had a specific recollection of the time of the events in question, see R&R at 23 n.27, Price and Logan approached the vehicle to speak with the occupants around midnight. Once Defendant was detained after attempting to leave the scene, the K-9 unit arrived within 15-30 minutes, the search warrant was obtained at 1:20 a.m., and was executed shortly thereafter. Therefore, Defendant was detained, at most, for approximately two to two-and-one-half hours prior to his arrest. Under the totality of the circumstances of this case, where officers diligently pursued both the canine sniff and the search warrant while Defendant was detained, the length of time of the detention, although at the upper end of permissible durations, was not unreasonable when considering the totality of circumstances. See United States v. Partin, No. 15-11008, 2015 WL 9022251, at *3 (11th Cir. Dec. 16, 2015) ("[A]lthough two hours is longer than the average Terry stop, in this scenario the officers were diligent and the total amount was reasonable in relation to the purpose of the stop and the necessary scope of the investigation."); Gil, 204 F.3d at 1350 (finding that detention of the defendant for seventy-five minutes while in handcuffs in a police car was not unreasonable).

Accordingly, this Court concludes that the Magistrate Judge's finding that Defendant was not in custody until he was arrested following the execution of the search warrant is supported by evidence in the record, and **OVERRULES** Defendant's objection.

II. <u>Defendant's Post-Arrest Waiver of His Miranda Rights Was Not Tainted by Any Illegal Detention.</u>

As this Court has just discussed, Defendant was lawfully stopped and questioned during an investigatory detention based upon reasonable suspicion. Consequently, there was no prior constitutional violation preceding Defendant's post-arrest statements, and Defendant's objection to the Magistrate Judge's R&R that concluded the same is **OVERRULED**.[3]

III. <u>CONCLUSION</u>

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections [Doc. 52]. Finding no

---

[3] Defendant's only objection to the R&R's denial of his motion to suppress post-arrest statements relates to Defendant's contention that his waiver of his Miranda rights was involuntary because of the prior alleged illegal detention. Def.'s Objs. at 8-12. Defendant has not objected to the Magistrate Judge's conclusion that, to the extent Defendant maintains a challenge to his post-arrest statements and waiver of <u>Miranda</u> rights independent of any fruit of the poisonous tree argument, that challenge is rejected based upon the finding that the totality of the circumstances indicates that Defendant knowingly, intelligently, and voluntarily waived his rights after being apprised of Miranda warnings. R&R at 31-41. The Court has reviewed those findings and conclusion for plain error and finds none.

clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 52] as the Opinion and Order of the Court.

It is hereby **ORDERED** that:

(1)  Defendant's Motion to Suppress Search and Seizure [Doc. 15] is **DENIED**; and

(2)  Defendant's Motion to Suppress Statements [Doc. 16] is **DENIED.**

**IT IS SO ORDERED** this 9th day of May, 2016.

/s/ Mark H. Cohen
MARK H. COHEN
United States District Judge